Due to technical difficulties, there are unrecorded portions of this oral argument. Court of Appeals for the Fourth Circuit. Our third case is Case 21-1411, Guardian Tax S.C. v. Ralph Day. And for the appellant in the third case, Mr. Abey, is that the correct pronunciation? That's correct, Your Honor. Good to have you with us, sir. You may proceed. Thank you, Judge. May it please the Court, Matt Abey of Nelson Mullins, here for Appellant Guardian Tax. Your Honors, before 1966, a senior lien holder could extinguish a junior federal tax lien without no... ...position, and then, if necessary, redeemed to protect a central... ...that's two initial questions. First, what type of notice the IRS is entitled to of the South Carolina tax sale process? And second, when is the IRS entitled to that notice? Here, Guardian provided the IRS with a summons in a quiet tax title action, a plenary proceeding before the district court. Therefore, under 7425A, the IRS is subject to being divested on the entry of a judgment in that quiet tax title proceeding. The IRS disagrees, though, and says that it should... Counsel, I'm sorry, I don't want to cut you off at the beginning. But the argument that this is a judicial sale case under subsection A, that was not presented to the district court, right? So, why should we reach it here? Yes, Your Honor, we believe that it was encompassed in a theory that was presented to the district court. There are several parts of the, in the appendix that I could point you to. No, that's okay. Yes, Your Honor. I mean, it was, I followed this, I followed your argument in your briefs. And I understand that you sort of got to the same place with some of the arguments you were making in your brief. But to say, I mean, it seems 100% clear that this was argued as a subsection B case. I'm going to follow our normal practice here and go ahead and address these arguments. There is, Judge. So, under Nelson, the Supreme Court's opinion in Nelson, we don't have to put a particular incantation, a particular set of words in order for the issue to be raised. Candidly, though, Judge, we could have been a little clearer below in what we were arguing. And I wouldn't say that these are new arguments, but they are arguments that are just fleshed out from the arguments that were presented to the district court. But under the courts, under this court's precedent in Iraq in 2020, the court can consider it. And that's especially true when it's a legal argument. All the parties agree that there are no factual issues here. That these are purely legal issues. And the court can consider it. Well, I've always understood it to be, Mr. Abey. The principle is you need to give the district court a fair shot at the question. You need to bring the issue before the district court, give the district court a chance to rule. Otherwise, you come to the Court of Appeals and you're ambushing the district court. That's not the point. We're a court. We're supposed to be a court of review, not first view. We have said many, many times. Yes, Your Honor. And I generally do agree with that. The court, though, has wider latitude when we're talking about a legal issue to address that on appeal. Even though a particular issue wasn't addressed at any length to the district court below. But I will say that the theory was very clearly presented to the district court. And looking at appendix page 34, which is the district court's order, the district court says, Plaintiff next argues that the proper remedy is to give the IRS 120 days to redeem the property rather than permitting the federal liens to remain on the property. That is the crux of the argument here. No, it's not the crux of your argument. We don't have to get bogged down in this. I totally appreciate that that remedy question is preserved in the district court. It's just that it was preserved under subsection B. If there's been a violation of subsection B, what's the remedy? But I absolutely agree that this remedy question was in front of the district court. Well, Judge, let me address that remedy question. So the second issue in my introduction I mentioned was, when is the IRS entitled to that notice? And the IRS states that they should have received a certified mail notice earlier in the process. And the IRS mistakenly applies 7425B, but they also misinterpret their own definition of the date of the sale. The IRS wasn't entitled to certified mail notice because at the time that a certified notice could have gone out, the IRS was not at risk of having its lien divested. That couldn't happen until the judgment is issued in the quiet tax title proceedings. So, therefore, the date of the sale, regardless of whether the court applies 7425A or B, the date of the sale is the date that the judgment is entered in the quiet tax title proceedings. Here, the IRS has received notice. They are fully aware that Guardian is attempting to divest it of its lien because under South Carolina law, the date when that would occur as a junior lien would be the date that a quiet tax title judgment is entered. So, yeah. Counsel, I know this is like a really technical area and common sense does not always prevail, so I do fully understand that. But it's weird, right, to say that a sale of property takes place after it's been sold at auction and after title actually has literally passed to a third party. You're saying the sale of that property took place at some point after that? That is unusual, right? I agree. It is unusual. But that was how this term of art is defined, both by the IRS and by Congress, when it was attempting to put this federal scheme across all 50 states. And the IRS, when we're looking at their Treasury regulation, and I'm talking 301.7425-2, the IRS attempts to define date of sale, and it gives you three different options as to what the date of the sale is. And the key point here is looking at divestment of junior liens on the property, and it's resulting directly from the public sale. Here in South Carolina, there is no divesting of junior liens at the auction. There's no divesting of junior liens at the time that the tax deed is issued. Junior liens can only be divested under this statutory quiet tax title proceeding, which is very specific to South Carolina, and it's distinct from your traditional common law quiet title action. So under the IRS's definition of date of the sale, we look to B-3, which is the date on which the IRS could be divested or junior lien holders could be divested of their interest in the property. Now, the IRS also gives some examples in that regulation, Examples 5 and 6, and when we're looking at that, we're looking at when the junior liens are divested. And in fact, in Example 6, the IRS says that the date of the sale is, quote, the date on which the holder of the tax certificate obtains absolute title. When you're looking at the quiet tax title action in South Carolina, guardian cannot get absolute title until a judgment is determined in the quiet tax title proceedings. So, yes, while I agree with you that common sense would say that the sale, a nonjudicial sale or judicial sale, is the date when the public auction takes place, because that's what we would think of traditionally as a sale. The term of art says that the date of the sale can be a later point, and here that is when guardian would obtain absolute title, so the date when the judgment would be entered. So because then there's no, because then the date of the sale is the date of the judgment, the IRS would get 120 days from that date in order to redeem. And so the IRS gets exactly what the 1966 Federal Tax Lien Act anticipated, which is notice and an opportunity to evaluate its position, look at the value of the property, look at the value of the liens, the amount that it would have to pay, determine whether or not there's enough equity in the property that it would like to redeem, and move forward with that redemption. They've got breathing room to do that, 120 days from the date that the judgment is entered. So therefore, Your Honors, regardless of whether we apply subsection A or subsection B of 7425, the date of the sale has not occurred yet. Oh, I'm sorry, there has been, the date of the sale has not, it didn't occur at the quiet title action? No, it's not the filing of the quiet title action, it is the date that the judgment is entered in the quiet title action. Because under South Carolina law, that's the date in which junior lien holders can be divested. That's when the court can order that junior lien holders are barred from their claims. So, Your Honors, when we're looking at that date under South Carolina law, we look then at the quiet tax title proceedings, and the statute says that the proceedings are supposed to be liberally construed to afford a complete remedy to a party like Guardian. And when we liberally construe that, of course, within the constraints of section 7425, we see that the date of the sale has not yet occurred. The IRS now has already received notice. And so, effectively, the purpose of the 1966 Federal Tax Lien Act is satisfied here. I'd like to move next, Your Honors, if I may, to the equitable subrogation argument. This equitable subrogation argument was raised below, and it was not resolved by the district court, of course. We believe that that was error, because when we look at the Dietrich case from the Fifth Circuit, the court there said that you must consider the state law of equitable subrogation when you're looking at an issue like this. And the district court below did not entertain this, did not make a ruling on it, even though we made it very clear that the IRS would have been jumping in priority and would have received a windfall if the court allowed the property or the IRS lien to remain on the property. So here, under that Dietrich case, as well as the other cases that we cite, because Guardian had no knowledge of the IRS liens, because it effectively paid off two senior liens, senior to the IRS, we get to stand in the shoes of both the county who held the tax lien as well as the bank who held the mortgage on the property. And so we would ask, then, that the court reverse and rule here that Guardian is equitably subrogated to those interests. Your Honors, if there are no further questions, I would just ask that the court here reverse and then remand so the district court can enter a judgment giving the IRS 120 days to redeem the property or be divested of its lien. Your Honors, I'm happy to answer any other questions the court may have or reserve the remainder for rebuttal. Yes, Ms. Zavada? Thank you, Your Honors. May it please the court, Julia Zavada for the United States. Good to have you back, Ms. Zavada. Thank you, Your Honor. The Internal Revenue Code sets forth clear rules to discharge a federal tax lien through a nonjudicial sale of property, which is what the Charleston County tax sale was. Those rules were not followed here. And for that reason, the federal tax liens on the property were not discharged. There is no dispute that federal tax liens against Ralph and Virginia Day attached to the property at Ocean Boulevard. There is no dispute that notices of these federal tax liens were filed more than 30 days prior to the sale of the Ocean Boulevard property as required by Section 7425B1 of the Code. And there's no dispute that Charleston County did not provide proper written notice of the sale to the government as required by Code Section 7425C1, Subsection 3A1 of the Treasury Regulation 301.7425, and the IRS Publications Directing Service. The county did not follow these procedures, and that's not in dispute. The county conducted the sale in accordance with South Carolina law. Guardian concedes at their page 19 of their brief that South Carolina law does not require notice to junior lien holders other than mortgagees. But South Carolina law does not operate to discharge a federal tax lien. Federal law does. But because the Internal Revenue Code statutory conditions were not met, here the district court correctly held that the Charleston County tax sale did not discharge the federal tax liens from the Ocean Boulevard property. Those liens stayed on the property. Guardian took title to the property subject to those liens. And that was the conclusion of the sale. At that point, Guardian held presumptive good legal title under South Carolina law. Council, sorry, I just want to make sure. Council, I just want to clarify. What is it that you think was the date of the sale for purposes of this notice requirement? The date of the sale was October 31, 2016. That was the auction date. And a year later, the conveyance ripened into a deed, which was recorded. But the presumptive title was conveyed as of the date of the auction. The auction itself. What do you. Sorry, you're probably about to answer my question. Go ahead. Well, I hope so, Your Honor. That language, when you determine when that date of sale is, how you pinpoint that, comes from the hanging paragraph at the end of subsection A in Treasury Regulation 301.7425-2. And that defines a nonjudicial sale as the act that divests the taxpayer's interest in property by operation of law, by public or private sale, this was a public sale, or by certain other conditions not applicable here. So the moment you're looking for to determine when the sale occurred is not when title is cleared of junior liens. It is the moment when the taxpayer's interest in the property is divested. And that happens here when Guardian buys the property. And Guardian accedes to the rights of the taxpayer in the property. And that's what the tax deed says. And it says it at page 65 of the appendix. It's clear that they're taking title. And as Judge Harris has observed, that's traditionally when you understand a sale to take place. Now, the availability of subsequent judicial proceedings unrelated to that sale, which are permissive, which the purchaser need not even pursue, does not change the nature of that sale as a completed transaction as of the date of sale. And here, we know that the county tax sale concludes with a deed that conveys title to the purchaser after the period of redemption runs, and that that title is presumptive good title under South Carolina law. There is no judicial action necessary for the taxpayer's interest to be extinguished and the title to vest in the purchaser. The purchaser has the choice, has the option under South Carolina law to bring a quiet title suit if junior liens remain on the property. But that is permissive. That is not mandatory. It's not part of the tax sale. It's not even particular to tax sales. The governing provisions of the South Carolina Code make clear that a quiet tax title suit is conducted just the same as any other quiet title suit. And it's not a part of the sale that's already completed. Subsequent proceedings don't change that the transfer of title, and not before, is when guardian will step into the shoes of the taxpayer and even obtain standing to bring a quiet title suit. By that time the suit is filed, the tax sale, the nonjudicial county tax sale, is complete. Turning next to guardian's contention that they are entitled to equitable subrogation, we suggest that this argument was not adequately briefed before the district court, but we note that this court can affirm for any basis in the record, and we submit that the record demonstrates that guardian does not meet the requirements for what at the bottom here is an equitable remedy. The Internal Revenue Code, Section 6323I, only allows subrogation to the extent provided by local law, and South Carolina law of subrogation requires five distinct factors to be met. The first of those factors is that the party has paid the debt. Here, guardian only paid the debt owed to the county, the ad valorem tax liens. Some of the purchase price went to costs of sale and other incidents, but the surplus of the sale price after the county's claims were satisfied was paid to the bank, and the bank's mortgage was extinguished. Guardian has paid nothing on behalf of the bank. The second condition is that the party seeking subrogation is not a volunteer, but had a direct interest in the discharge of the debtor lien, and this is where guardians doomed, because before they bid on the Ocean Avenue property, guardian had no interest in the property, and they shared no obligation with anyone who did. South Carolina law further requires that a party seeking subrogation be secondarily liable for the debt, but guardian was a stranger to the taxpayers here. They were under no obligation to satisfy their debts as well. And finally, I'm sorry, the fourth factor is that the party seeking subrogation did not have actual notice, but here it's undisputed on the record that guardian didn't bother to do a title search. Equity will not reward a lack of diligence by granting a factor in favor of lack of notice when they declined to do any due diligence. And finally, the fifth factor is that... Ms. Rivera, was there any explanation or is there any in the record for why they didn't do a title search? The district courts noted that the cost for them to do so would be de minimis, but other than that remark, I am not aware in the record of an explanation for why a title search was not procured. We know they did procure one eventually after they made the purchase. But the district court said it would have cost $400 or $500. Is that what it was? A few hundred dollars. It's certainly a minimal amount of the seven figures that they invested in the property. But there was no explanation tendered as to why a title search was not made? No, Your Honor. Thank you. The fifth and final factor to obtain separation in South Carolina is that no injustice be done to the other parties secured in the property. And that's not the case here because since the non-judicial sale was completed and the federal tax liens were not extinguished, the federal tax liens are now in first position on the property. In fact, there is a lien enforcement proceeding that has been commenced in the district court in South Carolina. That is case number 21-3998. And the addition of subrogation into this mix would demote the priority of the United States tax lien and would also impermissibly grant to a private purchaser the rights of a state sovereign creditor. And the equitable remedies do not extend that far. They certainly do not displace the complex yet clear federal governing regime for federal tax liens, which preserves those liens on property where proper written notice is not provided to the United States. Because that happened here, the liens remained on the property. The guardian has shown no error in the decision at the district court. And this court should affirm. We are happy to take any other questions. Judge Backer, Judge Harris? I don't have any questions. I don't either. Thank you very much. Mr. Abey? Yes, Your Honor. If I may go back to the date of the sale and why the IRS is incorrect in the way that they interpret the date of sale. My colleague just said that you should look at the hanging paragraph in 301.7425-2 to determine what. Did the district judge find the date of sale? The district court judge did not. But that was presented to the district court as far as our argument goes. We argued that the IRS should receive 120 days from the date of the judgment to determine whether or not it should redeem. If I may point you to this, so this hanging paragraph here that the IRS points to, that is trying to determine the distinction between judicial and non-judicial sale. That hanging paragraph actually doesn't define the date of the sale. The date of the sale is defined in paragraph B, which is titled date of sale. And it gives you three different options. In the first option, it talks about when there is a divestment of junior liens resulting directly from the public sale. Then the date of the sale is the date of the auction. Here in South Carolina, the public auction does not directly result in the divestment of junior liens on the property. Junior liens cannot be divested until a quiet tax title judgment is entered. So therefore, this first subsection can't apply. Subsection 2 can't apply because that talks about divestment of junior liens resulting directly from a private sale. There's no private sale here in South Carolina. It's a public auction. So subsection 2 doesn't apply. So then you come to subsection 3. And that says in the case of divestment of junior liens on property not resulting directly from a public or private sale, the date of sale is deemed to be, quote, the date on which junior liens on the property are divested under local law. So what the IRS is doing is they are conflating what type of sale this is, whether judicial or non-judicial, and the analysis under this subsection B for date of the sale. Because there's no divestment of junior liens in South Carolina until a judgment is entered, the date of the sale is the date on which the quiet title judgment is entered. And that's exactly what example 6 of this same regulation says. It says, for the purposes of computing a period of time determined with reference to the date of the sale, is the date on which the holder of the tax certificate obtains absolute title. And that date is the date when a court would enter judgment in the quiet tax title action. So the date of the sale here has not yet occurred. And we would ask that the court reverse the judgment so that the district court can enter judgment, saying that the IRS has 120 days to redeem or be divested because they've received notice of this sale at this time. Your Honor, I would like to next talk about the title search. And I would point the court to 438 through 440 of the appendix. And that's where Guardian explains the reason that it can't do a title search in every single case. In part, it would be cost prohibitive to do title searches. But more importantly, the title search wouldn't really matter before the auction. And this is because the date at which the IRS would be subject to be divested would be later on in the process. It would be after the quiet title action had been filed, the IRS had been served, and the court issues a judgment. So whether or not there's an IRS lien on the property is immaterial at the time that there's a bidding on the property. And that's whether or not you apply subsection A or subsection B. It's later in time when the divestment of the junior liens would occur. So the fact that the IRS liens on the property doesn't matter at the time that the auction occurs. Your Honors, this all goes back to the whole purpose of the 1966 Federal Tax Lien Act. And we've cited several different cases, but the Myers case, which is cited by the IRS in its brief, goes through a lot of the reasons for Section 7425. And it explains that the history and purpose was to make sure that after the Supreme Court's opinion in 1960 in Brosk, that the IRS received notice before its junior lien could be established. Here, that purpose has been effectuated because the IRS has received notice of this sale and has the opportunity to redeem. We'd ask that the court reverse so that the district court can enter judgment, giving the IRS 120 days to redeem or be divested of its interest. Thank you, Mr. Abbey. We appreciate the arguments of counsel. And we sincerely wish we could visit you in person and in the well of the court to congratulate you on your performance of oral argument. We can't do that, but we will next time you're here.
judges: Robert B. King, Stephanie D. Thacker, Pamela A. Harris